UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

June 3, 2013

LETTER TO COUNSEL:

      RE:   *Baron Brown, Jr. v. Commissioner, Social Security Administration*;
              Civil No. SAG-12-0685

Dear Counsel:

    On March 5, 2012, the Plaintiff, Baron Brown, Jr., petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 13, 16). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

    Mr. Brown filed his claims on May 10, 2007, alleging disability beginning on September 20, 2004. (Tr. 102). His claims were denied initially on September 14, 2007, and on reconsideration on February 14, 2008. (Tr. 40-47, 50-53). A hearing was held on June 17, 2009 before an Administrative Law Judge ("ALJ"). (Tr. 20-35). Following the hearing, on July 9, 2009, the ALJ determined that Mr. Brown was not disabled during the relevant time frame. (Tr. 12-19).

    Mr. Brown subsequently sought judicial review by this Court, and the Commissioner moved to remand this case. (Tr. 405-06). On August 19, 2010, the Court granted the Commissioner's motion and remanded for further administrative proceedings. (Tr. 404). On remand, the Appeals Council instructed the ALJ to consider specific medical evidence and the effects of Mr. Brown's obesity. (Tr. 401-03). A second hearing was held on October 18, 2011. (Tr. 592). Following the hearing, on December 22, 2011, the ALJ again determined that Mr. Brown was not disabled during the relevant time frame. (Tr. 379-84). Mr. Brown had the option to file written objections to the Appeals Council or to wait until the ALJ's decision became final and to file a new civil action in federal court. (Tr. 376-77). Mr. Brown elected to wait for the ALJ's decision to become final and filed the present action. Therefore, the ALJ's 2011 decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Brown had severe impairments of bilateral chondromalacia, status post knee surgeries, and obesity. (Tr. 380). Despite these impairments, the ALJ determined that Mr. Brown retained the residual functional capacity ("RFC") to: "lift 5 pounds frequently, 10 pounds occasionally. He can stand or walk for 30-minute increments for a total of eight hours a day. He cannot perform frequent bending or stooping." (Tr. 380-81). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Brown could perform jobs that exist in significant numbers in the national economy and that he was therefore not disabled during the relevant time frame. (Tr. 383-84).

Mr. Brown presents five arguments on appeal: (1) that the ALJ failed to evaluate the effects of Mr. Brown's obesity at Steps Three through Five of the sequential evaluation process; (2) that the ALJ failed to address Mr. Brown's complaints of back pain, high blood pressure, and obstructive sleep apnea; (3) that the ALJ failed to give a proper RFC because the decision was silent on sitting, pushing, and pulling; (4) that the RFC is ambiguous as to the ALJ's finding that Mr. Brown "cannot perform frequent bending or stooping;" and (5) that the ALJ presented an improper hypothetical to the VE. Each argument lacks merit.

First, Mr. Brown contends that the ALJ did not evaluate the effects of Mr. Brown's obesity at Steps Three through Five of the sequential evaluation process. The ALJ's decision when read as a whole, however, references and considers Mr. Brown's obesity numerous times. As an initial matter, the ALJ acknowledged that obesity may affect a weight-bearing joint and "may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week, or equivalent schedule." (Tr. 380). With reference to Mr. Brown's condition specifically, the ALJ noted that Dr. James Murphy—an orthopedic surgeon—has treated Mr. Brown since 2004, at which time Mr. Brown weighed 474 pounds. (Tr. 382). The ALJ also acknowledged that Mr. Brown has lost more than 100 pounds during the relevant time period. (Tr. 382). In addition, the ALJ cited Dr. Stuart Brager's May 26, 2005, opinion that Mr. Brown's knee would not recover significantly at his weight and would "hinder and restrict his active duties as a truck driver and semi-skilled physical laborer." (Tr. 187-88, 381). In an addendum to his May 2005 opinion, which the ALJ quoted in his decision, Dr. Brager stated that "[m]anual duty that requires heavy pushing, pulling and lifting in excess of 50 pounds is not appropriate for his *severe degree of obesity* and is also complicated by the knee injury." (Tr. 189, 382) (emphasis added). Indeed, Dr. Brager's independent medical examination was conducted for the specific purpose of addressing Mr. Brown's "serious obesity problem." (Tr. 186). The ALJ was well aware of Mr. Brown's obesity and concluded that Mr. Brown can nevertheless perform a range of sedentary work. (Tr. 382-84). Accordingly, there is substantial evidence to sustain the ALJ's conclusion.

Second, Mr. Brown argues that the ALJ failed to address his complaints of back pain, high blood pressure, and obstructive sleep apnea. Turning first to sleep apnea, Mr. Brown contends that the ALJ failed to mention a November 7, 2003, sleep study performed by Dr. Robert Peterson. It is clear, however, that the ALJ considered this sleep study and concluded that Mr. Brown's "sleep apnea was treatable with a CPAP machine and weight loss, among other

things." (Tr. 380). The ALJ then noted that Mr. Brown has lost more than 150 pounds since the sleep study was performed. (Tr. 380). As a result, the ALJ concluded that Mr. Brown's "sleep apnea is non-severe because it does not cause more than a minimal limitation in [Mr. Brown's] ability to perform basic work activities." (Tr. 380). Therefore, there is substantial evidence to sustain the ALJ's conclusion.

Turning next to back pain and hypertension, Mr. Brown is correct that the ALJ decision does not mention these impairments. The ALJ's failure to analyze these impairments is of no consequence, however, as Mr. Brown does not cite any evidence of significant back problems or high blood pressure. In fact, in his hearing testimony, Mr. Brown denied any current problem due to hypertension (Tr. 601), and he presented no testimony suggesting that he suffers from significant back pain. (Tr. 594-602). There is no evidence that back pain or hypertension resulted in greater limitations than those that were included in the hypothetical question posed to the VE at the hearing.

Mr. Brown's third argument is that the ALJ failed to give a proper RFC because the ALJ's decision was silent as to sitting, pushing, and pulling. However, when viewing the ALJ's decision as a whole—rather than simply focusing on the bolded RFC summary—it is clear that the ALJ's decision sufficiently addressed these abilities. As to sitting, the ALJ cited several opinions indicating that Mr. Brown could perform a range of sedentary work, which is primarily performed while sitting. (Tr. 382). Moreover, the ALJ accepted "the State Agency assessment limiting the claimant to two hours of standing/walking in an eight-hour workday, as well as the opinions of Drs. Brager and Zamani to the extent that sedentary work is possible." (Tr. 382, 548). That same State Agency assessment noted that Mr. Brown was capable of sitting for about six hours in an eight-hour workday. (Tr. 548). Therefore, the ALJ sufficiently addressed Mr. Brown's ability to sit, and there is substantial evidence to sustain the ALJ's conclusion.

As to pushing and pulling, the ALJ acknowledged and rejected Dr. Zamani's opinion that Mr. Brown was "incapable of carrying, lifting, pulling, and pushing." (Tr. 383). The ALJ explained that the opinion of "no lifting" would preclude even minimal lifting and carrying and that there was "no basis for a complete exclusion." (Tr. 383). The ALJ further noted that "[s]uch a finding [was] inconsistent with Dr. Brager's later opinion and the entirety of the record." (Tr. 383). The ALJ's rejection of Dr. Zamani's restriction reasonably includes Mr. Brown's ability to push and pull. Indeed, Dr. Brager opined that it was inappropriate for Mr. Brown to perform manual duty "that requires *heavy pushing*, *pulling*, and *lifting* in excess of 50 pounds." (Tr. 189, 383) (emphasis added). Dr. Brager's opinion that Mr. Brown can push, pull, and lift up to 50 pounds is supported by the State Agency assessment, which provides an unlimited restriction in Mr. Brown's ability to push and pull, "other than as shown for lift and/or carry" (i.e., lift and/or carry ten pounds). (Tr. 548). Therefore, there is substantial evidence to sustain the ALJ's conclusion.

Fourth, Mr. Brown contends that the RFC is ambiguous as to the ALJ's finding that Mr. Brown "cannot perform frequent bending or stooping." According to Mr. Brown, the RFC must

"address what the claimant can do, not what he cannot do" and that the ALJ's finding "begs the question of what stooping and bending the claimant is capable of performing." (Pl.'s Br. 7). Although the RFC states that Mr. Brown cannot perform frequent bending or stooping, this conclusion necessarily means that he is able to perform occasional bending or stooping. This interpretation is consistent with the hypothetical question posed to the VE, which limited Mr. Brown to occasional stooping and no other postural movements. (Tr. 584, 603). Moreover, the state agency physician's assessment supports a finding that Mr. Brown is capable of occasional stooping. (Tr. 549). Accordingly, the RFC is not ambiguous as to Mr. Brown's ability to bend and stoop, and there is substantial evidence to sustain the ALJ's conclusion.

Finally, Mr. Brown argues that because the RFC was erroneous, the ALJ presented an improper hypothetical to the VE. The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). As described above, the RFC was proper and the ALJ's hypothetical question posed to the VE accurately reflected Mr. Brown's impairments. Therefore, the ALJ's hypothetical was proper, and the VE was able to offer testimony about any jobs existing in the national economy that Mr. Brown could perform.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 13) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 16) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge